**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

  Plaintiff,

vs.                                   No. CR 05-469 JB

JOSE MICHAEL MONTOYA,

  Defendant.

**MEMORANDUM OPINION AND ORDER**

  **THIS MATTER** comes before the Court on: (i) the Defendant Jose Michael Montoya's Exceptions to Pre-Sentence Report and Sentencing Memorandum, filed December 29, 2009 (Doc. 348)("Sentencing Memorandum"); and (ii) Montoya's Supplemental Sentencing Pleading, filed January 10, 2007 (Doc. 350)("Supplemental Pleading").  The Court held a sentencing hearing on February 8, 2007.  The primary issues are: (i) whether the Court should accept the plea agreement that Montoya entered into with the United States Attorney's Office and sentence him to a term of sixteen months imprisonment; and (ii) whether the Court should allow Montoya to serve any term of imprisonment it imposes intermittently.  Because the Court believes that the sentence to which the United States and Montoya agreed upon in the plea agreement is reasonable, and is sufficient without being greater than necessary to achieve federal sentencing goals, the Court will accept the plea agreement and sentence Montoya to a term of sixteen months imprisonment.  Because the Court is not convinced, however, that serving that term intermittently is in the best interest of Montoya and his family, or is practical from an administrative standpoint, the Court will deny his request to serve his sentence intermittently.

**PROCEDURAL BACKGROUND**

On October 11, 2006, Montoya pled guilty to one count of conspiracy to possess with intent to distribute less than 100 grams of heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and one count of bulk cash smuggling in violation of 31 U.S.C. § 5332(a) and (b). See Plea Agreement ¶ 3 at 2, filed October 11, 2006 (Doc. 322)("Plea Agreement"); Information at 1-2, filed October 11, 2006 (Doc. 319). As part of the plea agreement, the parties stipulated, pursuant to rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, that the sentence of imprisonment shall be for a term of sixteen months. See Plea Agreement ¶ 5.a, at 3.

The United States Probation Office ("USPO") released its Presentence Investigation Report ("PSR") in this matter on December 6, 2006. See PSR at 2. On December 29, 2006, Montoya filed his Sentencing Memorandum raising a number of factual objections to the PSR, and requesting that the Court approve the plea agreement the parties reached. On January 10, 2007, Montoya filed his Supplemental Pleading requesting that the Court allow Montoya to serve any term of imprisonment imposed intermittently.

**I.      FACTUAL OBJECTIONS TO THE PSR.**

Montoya raises a number of factual objections to the PSR. Some of the changes that need to be made are the result of the time that has passed between the disclosure of the original PSR and of the sentencing hearing. For similar reasons, other objections are now moot.

**A.      COVER PAGE.**

Montoya is correct that the sentencing date on the cover page of the PSR is incorrect. The Court has rescheduled the sentencing, but the USPO has filed two addendums to the PSR. The final PSR will reflect the correct sentencing date and Montoya's allegations of the number of dependents.

    **1.** **Date of Sentencing.**

 The PSR's cover page states that the sentencing date in Montoya's case will be December 28, 2006.  See PSR at 1.  At the time that Montoya filed his exceptions, the Court had re-scheduled the sentencing hearing for January 19, 2007.  The USPO has filed two addendums to the PSR.  In the Second Addendum, filed January 12, 2007, the USPO amended the cover page of the PSR to reflect a sentencing date of January 19, 2007.  See Second Addendum to the Presentence Report at 1 ("Second Addendum").  Subsequent to the issuance of the Second Addendum, however, the sentencing hearing was rescheduled for February 8, 2007.  The Court held the sentencing hearing on February 8, 2007.  Accordingly, the Court will sustain Montoya's objection and amend the PSR and the Second Addendum to reflect the February 8, 2007 sentencing date.

    **2.** **Dependents.**

 The PSR's cover page states that Montoya has one dependent.  See PSR at 1.  Montoya objects, stating that he has two dependents -- his wife and his infant son.  See Sentencing Memorandum ¶ 1, at 1.  The Court will sustain Montoya's objection and amend the PSR to reflect that he has two dependents.

  **B.** **PSR ¶ 13.**

 Paragraph 13 of the PSR indicates, in pertinent part, that Montoya is employed as a lead stocker at White Sands Missile Range.  See PSR ¶ 13, at 5.  Montoya states that, as a result of his guilty plea in this case, he is no longer employed at the White Sands Missile Range.  See Sentencing Memorandum ¶ 2, at 1.  Montoya represents that he is currently assisting a friend in framing a house and is looking for full-time employment.  See id.  In its Second Addendum, the USPO amended paragraph 13 of the PSR to reflect this updated information.  See Second Addendum at 1.  The Court

will dismiss Montoya's objection to paragraph 13 as moot.

**C.     OFFENSE CONDUCT.**

Paragraphs 24 through 80 of the PSR document the offense conduct the United States alleges involving Montoya and the other defendants charged in this case. The "Offense Conduct" section of the PSR "highlights the involvement of various participants in the drug conspiracy and provides information regarding the more salient elements of the investigation." PSR ¶ 24, at 8. The section also includes drug tables that reflect the dates and size of drug transactions that the defendants conducted. See PSR at 11-13, 14, 17, 18, 20, 21-22, 23, 25-26, 27-28. Montoya objects to paragraphs 24 through 80 and argues that they do not properly reflect the limited nature of his participation in the drug conspiracy. See Transcript of Hearing at 4:14-23 (Rosenstein)(taken February 8, 2007)("Transcript").[1]

According to Montoya, the offense conduct provides no evidence that Montoya was involved in the conspiracy for longer than the one day on which he delivered drugs to another Defendant and received the proceeds from drug sales that others made. See Sentencing Memorandum ¶ 3, at 2. Montoya represents that his role was limited to that of a courier. See id. Montoya argues that the United States' allegation that co-Defendants referenced Montoya by three separate nicknames in intercepted conversations cannot be proved beyond a reasonable doubt. See id.

Montoya contends that the United States intercepted thousands of telephone calls in investigating this case and that he is heard on only one. See id. ¶ 3, at 1. Montoya asserts that the substance of that conversation was limited to him informing a co-Defendant that he was in town, and

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

thus the conversation does not contain anything inculpatory regarding the conspiracy. See id. The PSR associates two drug seizures with Montoya's conduct: (i) 168 grams of heroin based on intercepted phone calls describing a sale in this amount; and (ii) 1,155 grams of heroin based on agents' seizure of $33,060.00 that was in Montoya's possession.[2]  See PSR at 18. Montoya asserts that his co-Defendants were involved in selling both heroin and cocaine, and, because it is unclear whether the seized money was from the sale of heroin or cocaine, it is unclear how the figure of 1,155 grams was calculated. See Sentencing Memorandum ¶ 3, at 2.

The USPO responds that the United States Attorney's Office prepared the PSR's offense conduct section. See PSR ¶ 24, at 8; Second Addendum at 2. The USPO states that, at the time it prepared its Second Addendum, the United States had not filed a response to Montoya's Sentencing Memorandum.

The Court does not believe that the information to which Montoya objects should be removed from the PSR, or that the Court should limit the breadth of information it considers for the purpose of sentencing. See 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."). The Court will, however, modify the PSR to reflect Montoya's characterization of the events constituting the offense conduct. The Court will direct the USPO to incorporate Montoya's objection into the PSR and to prepare a statement reflecting Montoya's version of the events. The Court also notes that, at the sentencing hearing in this case, the United States' counsel indicated that he did not have

---

[2] The PSR asserts that $33,060.00 is equivalent to the value of approximately 1,155 grams of heroin. See PSR at 18.

any objection to this addition.  See Transcript at 4:24-5:3 (Martinez).

### D. PSR ¶ 51.

Paragraph 51 of the PSR notes that, after a New Mexico State Police officer discovered $33,060.00 in cash during a traffic stop of Montoya's vehicle which federal authorities had requested the officer make, a Drug Enforcement Administration drug-detection dog alerted on the money for the presence of drugs.  See PSR ¶ 51, at 18.  Montoya objects to this paragraph, arguing that the significance of this drug-detection canine alert is "minuscule," because "virtually all paper money circulated in the United States has drug residue on it."  Sentencing Memorandum ¶ 4, at 2.

At the sentencing hearing, Montoya's counsel clarified that he is not asking the Court to strike this statement, but merely wished to argue that the statement has little value.  See Transcript at 5:16-18 (Rosenstein).  The Court will overrule Montoya's objection.  The Court acknowledges Montoya's argument regarding the value of the evidence in paragraph 51, but is free to consider this information, irrespective of its value.  See 18 U.S.C. § 3661.

### E. PSR ¶ 98.

Montoya notes that paragraph 98 of the PSR refers to his father as "Victor Martinez" and that his father's last name is Montoya, not Martinez.  PSR ¶ 98, at 31.  In its Second Addendum, the USPO has corrected paragraph 98 to reflect Montoya's father's proper name.  See Second Addendum at 2.  The Court will dismiss Montoya's objection to paragraph 98 as moot.

### F. PSR ¶ 104.

Paragraph 104 of the PSR states, in pertinent part, that Montoya's marriage "produced one child: Uriel Montoya, age 4 months."  PSR ¶ 104, at 32.  Montoya objects, stating that, at the time he filed his objections, his son was seven months old.  See Sentencing Memorandum ¶ 6, at 2.  The

USPO has amended paragraph 104 to reflect Uriel Montoya's proper age. The Court will therefore dismiss Montoya's objection to paragraph 104 as moot.

### G.     PSR ¶ 106.

Montoya reports that his son suffers from health problems related to his thyroid and is required to take daily medication. See PSR ¶ 104, at 32. In paragraph 106 of the PSR, the USPO notes that it requested Montoya submit additional documentation regarding his son's health problems, but, at the time it disclosed the PSR, it had not received any additional materials. See PSR ¶ 104, at 33.

Montoya objects to paragraph 106 and contends that his counsel sent the requested documentation to the USPO by facsimile transmission. See Sentencing Memorandum ¶ 7, at 3. The USPO acknowledged that it received this documentation in its Second Addendum. See Second Addendum at 2. The Court will dismiss Montoya's objection to paragraph 106 as moot.

### H.     PSR ¶¶ 112-113.

Paragraph 112 of the PSR indicates that Montoya is employed full-time as a project manager with Tresco Co., Inc. in White Sands, New Mexico. See PSR ¶ 112, at 34. Paragraph 113 of the PSR indicates that Montoya was employed from April 2005 through August 2006 with Imperian Telemarketing in El Paso, Texas. See PSR ¶ 113, at 34. Montoya represents that he lost his employment at White Sands as a result of pleading guilty in this case, and that Imperian Telemarketing is located in Las Cruces, New Mexico. See Sentencing Memorandum ¶ 8, at 3.

The USPO has corrected the PSR to reflect that Montoya lost his position at White Sands after pleading guilty in this case. See Second Addendum at 1. The USPO has also corrected the PSR to reflect the location of Imperian Telemarketing in Las Cruces. See id. at 2. The Court will dismiss

Montoya's objections to paragraphs 112 and 113 as moot.

### I.    PSR ¶¶ 147-149.

In paragraphs 147 through 149 of the PSR, the USPO considered, and ultimately rejected, a downward departure under U.S.S.G. § 5K2.20 on the basis of its conclusion that the conduct underlying Montoya's offense was not aberrant behavior. The USPO observed that, according to discovery reports, Montoya participated in the conspiracy to distribute heroin from August 2004 through November 2004, and that he was responsible for at least 2.7 kilograms of heroin. See PSR ¶ 148, at 42. Based on those findings, the USPO concluded that Montoya was not entitled to a downward departure for aberrant behavior. See id.

Montoya counters that the only "hard evidence" against him involves the delivery of drugs to a co-defendant and the receipt of money on the same day. Sentencing Memorandum ¶ 9, at 3. Montoya argues that this conduct should be considered a single criminal transaction and represents a "marked deviation from an otherwise law abiding life." Id. Montoya asserts that this case meets the criteria for the aberrant behavior reduction under U.S.S.G. § 5K2.20. See Sentencing Memorandum ¶ 9, at 3.

Nevertheless, Montoya acknowledges that, pursuant to his Rule 11(c)(1)(C) plea agreement, he has given up his right to request a downward departure under the Guidelines. See id. Moreover, the Court is not convinced that Montoya's circumstances are so extraordinary that his case falls outside the heartland of drug cases that federal courts see. Unfortunately, many people who are otherwise law abiding get involved with the wrong people and with drugs. The Court does not believe Montoya's circumstances warrant a departure. Even if the did, however, given the rule 11(c)(1)(C) agreement, the Court would exercise its discretion not to depart. Because the Court

believes this case remains within the heartland of cases that federal courts see, granting a departure would create unwarranted disparities in sentences for similarly situated defendants.

On the other hand, the Court acknowledges that Montoya's arguments related to aberrant behavior, and to his overall degree of culpability, may be relevant to the Court's analysis regarding whether it should grant a variance from the guideline sentence consistent with its authority under United States v. Booker, 543 U.S. 296 (2005). Accordingly, while the Court will overrule Montoya's objection to the USPO's analysis under U.S.S.G. § 5K2.20, if Montoya chooses to make an argument for a variance under United States v. Booker, he may renew his argument related to aberrant behavior, and the Court will consider it at that time.

## II.    THE COURT WILL ACCEPT THE PLEA AGREEMENT INTO WHICH THE PARTIES HAVE ENTERED.

In calculating his guideline imprisonment range, the USPO assigned Montoya a base offense level of thirty-two based on its finding that he was accountable for at least 2.7 kilograms of heroin. See PSR ¶ 87, at 30; U.S.S.G. § 2D1.1(4) (assigning a base offense level for drug crimes involving at least one kilogram but less than three kilograms of heroin). The USPO determined that Montoya was entitled to a two-level reduction because he was a minor participant in the drug conspiracy, see U.S.S.G. § 3B1.2(b), and a three-level reduction for his acceptance of responsibility, see U.S.S.G. § 3E1.1. See PSR ¶¶ 90, 93, at 30-31.

The United States contends that it attributed 2.87 kilograms of heroin to Montoya based on its interpretation of five intercepted telephone calls in which co-Defendants stated that they were "bringing up six" on the day that Montoya was arrested. Transcript at 10:7-14 (Martinez). The United States represents that it interpreted these calls as establishing that the conspiracy was

transporting six pounds -- approximately 2.87 kilograms -- of heroin from Mexico that day. The United States concedes that no drugs were seized on the day Montoya was arrested, but states that six pounds is the amount it believes it could have proved at trial beyond a reasonable doubt. See id. at 10:15-19 (Martinez).

Montoya contends that the United States' representations regarding what amount could have been established beyond a reasonable doubt cannot be substantiated, because no search warrant was ever obtained or executed upon the co-Defendants to whom Montoya is alleged to have delivered drugs. See id. at 11:7-12 (Rosenstein). Moreover, Montoya asserts that "six" could have referred to six pounds, but it also could have meant six grams, six ounces, six kilograms, or even six tons, and the United States has not presented any other evidence to corroborate its interpretation of the phone calls upon which it relies. See id. at 11:12-16 (Rosenstein). Montoya points out that the participants in the conversations upon which the United States relies were Mexican nationals who would more likely be accustomed to the metric system, and thus be unlikely to be referring to measurements in pounds or ounces. See id. at 13:7-14 (Rosenstein). Finally, Montoya emphasizes that no amount of drugs was seized when he was arrested. See id. at 13:17-18 (Rosenstein).

Despite his arguments, Montoya acknowledges that he has pled to some amount of responsibility for a drug offense and suggests the Court use eighteen as his base offense level. See id. at 13:5-7 (Rosenstein). An offense level of eighteen corresponds to an offense involving at least twenty, but less than forty, grams of heroin. See U.S.S.G. § 2D1.1(11). The Court does not believe that, based on the record before it, the USPO's attribution of six pounds of heroin is supported by a preponderance of the evidence. Consistent with Montoya's concession, however, the Court will make a finding that he is responsible for at least twenty, but less than forty, grams of heroin and

assign a base offense level of eighteen.[3]

Because the United States does not object to the USPO's application of the minor role adjustment or acceptance of responsibility provisions, see Transcript at 14:17-18; 18:7-9 (Martinez), the Court will incorporate those reductions into its guideline calculation. A base offense level of thirteen, combined with Montoya's criminal history category of I results in a guideline imprisonment range of twelve to eighteen months. Because the sixteen-month sentence to which the parties stipulated in the plea agreement falls within the guideline range, the Court will accept the plea agreement, and its judgment and sentence will be consistent with the plea agreement.

## III.   THE COURT WILL NOT ALLOW MONTOYA TO SERVE HIS TERM OF IMPRISONMENT INTERMITTENTLY.

Montoya requests that the Court allow him to serve his term of imprisonment intermittently -- on weekends, holidays, and vacations to which his employer entitles him -- until his sentence is served. See Supplemental Pleading at 1. Montoya represents that he has been offered full-time

---

[3]Because the drug amounts that the United States alleged were in pounds or ounces, but the Guidelines define offense level for heroin offenses in metric measurements, there was some confusion at the sentencing hearing regarding the precise amount of heroin for which Montoya was being held responsible. At the hearing, the Court asked the USPO what the offense level would be if it made a finding that Montoya was responsible for six ounces, as opposed to six pounds, of heroin. See Transcript at 12:13-15 (Court). The Probation Officer responded that one ounce is equivalent to 28.35 grams. See id. at 12:22 (Garcia); U.S.S.G. § 2D1.1 cmt. n.10 (Measurement Conversion Table). The Court misunderstood the Probation Officer's response as the metric equivalent for six ounces, as opposed to the conversion ratio for one ounce, and applied U.S.S.G. § 2D1.1(11) to arrive at a base offense level of eighteen -- the level Montoya subsequently adopted. The Court should have multiplied 28.35 by 6, however, to arrive at a result of 170.10 grams; an offense involving 170.10 grams of heroin would result in a base offense level of 26. See U.S.S.G. § 2D1.1(7). Nevertheless, because the Court believes that the United States has not presented evidence establishing any precise amount of heroin by a preponderance of the evidence, because Montoya has pled guilty to possessing less than 100 grams and conceded a finding of between 20 and 40 grams, and because the United States has not objected to that finding, the Court will apply a base offense level of 18. The Court notes that a base offense level of eighteen results in a reasonable sentence for Montoya.

employment that would pay between $12.00 and $15.00 per hour, and that this arrangement would allow him to continue to work and support his family. See id. at 2. Montoya contends that an intermittent sentence would allow him to "retain his self-respect while paying his debt to the community by continuing to work and fulfill his moral and legal responsibilities." Id.

The Court acknowledges that the Guidelines permit it to substitute one day of intermittent confinement for each day of imprisonment imposed. See U.S.S.G. § 5C1.1(e)(1). At the sentencing hearing, however, the Court asked the Probation Officer about Montoya's proposed arrangement, and she indicated that the Bureau of Prisons ("BOP") would not authorize such a sentence unless a defendant had been assigned probation and intermittent confinement was a condition of supervised release. See Transcript at 26:3-7 (Garcia). The Probation Officer indicated that the BOP representative to whom she had spoken indicated that the BOP would have a difficult time accommodating the sentence that Montoya proposes. See id. at 27:14-15 (Garcia)

At the sentencing hearing, the United States' counsel expressed its concern that the imposition of an intermittent sentence might be perceived as setting a dangerous precedent for future cases. See id. at 29:14-16 (Martinez). Nevertheless, the United States did not formally object to an intermittent sentence, stated that it requested Montoya be sentenced to sixteen months imprisonment, but maintained that the terms under which that sentence was served was up to the Court and the BOP. See id. at 29:16-19 (Martinez).

Regardless whether an intermittent sentence is authorized or practical in this case, the Court will decline to impose such a sentence. The Court recognizes that Montoya's imprisonment will impose a hardship on his family, but it is not convinced that the hardship will be that much greater if he serves a standard sentence rather than an intermittent one. Because of the amount of days that

Montoya will be required to serve, the Court is not certain that it is not in his and his family's best interest for him to serve his sentence as expediently as possible, rather than to be incarcerated intermittently for a significant number of years, and then to re-engage with his family and support them full time. The Court believes that such a prolonged period of intermittent confinement might actually undermine Montoya's efforts towards rehabilitation. Moreover, given the expenditure of government resources that would be necessary each time Montoya checks in and out of prison, the Court is not convinced that the other economic benefits that might accrue to Montoya's family and the government advance the institutional interests at play or represent a neutral substitution.

**IT IS ORDERED** that Montoya's Exceptions to Pre-Sentence Report are sustained in part, overruled in part, and dismissed as moot in part. The Court will accept the plea agreement that the parties entered into and impose a term of imprisonment of sixteen months. The request in Montoya's Supplemental Sentencing Pleading is denied. The Court will not permit Montoya to serve his term of imprisonment intermittently.

                                                                                      _____
                                                                                      UNITED STATES DISTRICT JUDGE

*Counsel:*

David C. Iglesias
  United States Attorney for the
    District of New Mexico
Damon P. Martinez
  Assistant United States Attorney
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Judith A. Rosenstein
Albuquerque, New Mexico

*Attorney for the Defendant*